## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO.  CR-11-0234-HE |
| | ) | |
| IVAN GUZMAN-TORRES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Defendant Valente Campos is charged along with six other defendants in a twenty count indictment.  He specifically is charged with one count of conspiracy to possess with intent to distribute and to distribute methamphetamine in violation of 21 U.S.C. § 846, and two counts of unlawful use of a communication facility to distribute methamphetamine in violation of 21 U.S.C. §843(b).  Defendant Campos has filed a motion seeking to suppress all communications and evidence obtained from a court-authorized wiretap.  He also has filed motions seeking the government's disclosure of Fed.R.Evid. 404(b) evidence and asking the court to review *in camera* presentence reports for government witnesses.  Having considered the parties' briefs, the wiretap application, supporting affidavit and authorizing order, the court concludes defendant's motion to suppress, as well as his two other motions, should be denied.[1]

In the spring of 2011, federal law enforcement officers were investigating a multi-drug importation, transportation and distributing organization that was operating in the Oklahoma

---

[1]*A hearing on the suppression motion is unnecessary as it raises only legal issues.  See* <u>United States v. Serrano</u>, *209 Fed.Appx. 796, 799 (10th Cir. 2006) (unpublished).*

City area and several other states.  After using various traditional investigative techniques, the officers decided to seek a wiretap.  An application was submitted on April 20, 2011, and an order authorizing a wiretap was issued the same day.  Defendant Campos challenges both the application and order.  He contends the court order failed to identify the Department of Justice official who authorized the wiretap. He claims the application was deficient in that the supporting affidavit failed to establish the wiretap was "necessary,"  as required by Title III of the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. §§ 2510-2522.

Title III governs the use of wiretaps and evidence obtained from their use.  United States v. Radcliff, 331 F.3d 1153, 1160 (10th Cir. 2003).  Once a district court authorizes a wiretap it is presumed valid.  *Id.*  Defendant bears the burden of proving its invalidity.  *Id.*

Before submitting a wiretap application to a federal judge, a law enforcement agent must obtain authorization from an executive official and identify that person in the application.  United States v. Foy,  641 F.3d 455, 462 (10th Cir. 2011) (citing 18 U.S.C. § § 2516(1) and 2518(1)(a)), *petition for cert. filed*, (U.S. Aug. 19, 2011) (No. 11-6362).  The wiretap order "issued pursuant to the application [also] must specify the identity of that authorizing official."  Radcliff, 331 F.3d at 1160, citing 18 U.S.C. § 2518(4)(d).

 A defendant may move to suppress evidence obtained through a wiretap when "'the order of authorization or approval under which [the communication] was intercepted is insufficient on its face.'"  Foy, 641 F.3d at 463 (quoting 18 U.S.C. § 2518(10)(a)(ii)). Defendant Campos contends the order of authorization was insufficient because it merely referred to an "application authorized by an appropriate official of the Criminal Division,

United States Department of Justice," without naming the official.  Order, Government's

Exhibit 3.  While he acknowledges that the application identified the official, Mary Patrice

Brown, by name, Application, Government's Exhibit 2, defendant argues that the order failed

to include that information and therefore was invalid.

  "Not all deficiencies in wiretap applications ... warrant suppression."  Foy, 641 F.3d

at 463.  "[T]he critical inquiry is whether there has been a 'failure to satisfy any of those

statutory requirements that directly and substantially implement the congressional intention

to limit the use of intercept procedures to those situations clearly calling for the employment

of this extraordinary investigative device.'"  *Id.* (quoting United States v. Giordano, 416

U.S. 505, 527 (1974)).

  In Radcliff, 331 F.3d at 1160-63, the Tenth Circuit addressed the same defect at issue

here.  The defendant in that case sought to suppress evidence obtained from a wiretap

because the wiretap orders[2] failed to name the authorizing official from the Department of

Justice.  The wiretap applications were authorized by an appropriate individual who was

identified by name in the applications.  However, the orders "did not specify the identity of

any person," but instead "listed by title every Department of Justice official with legal

authority to authorize an application." *Id.* at 1162.  The court found the orders "to be facially

insufficient in violation of § 2518(10)(a)(ii)."  However, suppression was not required

because "the facial insufficiency ... was a technical defect that did not disrupt the purposes

---

   [2]*The wiretap was authorized pursuant to an original application and then extended by additional applications.*

of the wiretap statute or cause any prejudice to Defendant." *Id.* at 1163.

Ms. Brown was identified in the wiretap application and defendant has not asserted that she lacked statutory authority to authorize the application. Defendant also has not asserted he suffered any prejudice from the order's failure to specifically name Ms. Brown. Following <u>Radcliff</u>, the court concludes that evidence obtained from the wiretap will not be suppressed on the basis of the technical defect. *See* <u>Foy</u>, 641 F.3d at 463 (officers' reference to outdated AG Order in wiretap applications "was merely a technical defect which did not subvert the primary purposes of the wiretap statute's authorization requirement").

As his second ground for suppression, defendant contends there was no need for electronic interception in this case as traditional investigative techniques would have sufficed. Defendant argues that the government sought the wiretap because it would "make someone's job easier." Defendant's motion, p. 12. He found the government's explanation regarding the inadequacies of various investigative options – use of undercover agents, confidential sources, controlled purchases, a pen register and caller identification device and arrest warrants– to be lacking. He also questioned how the government could simply assume a search warrant would be premature or grand jury subpoenas would be ineffective when neither was attempted.

All wiretap applications must include "a full and complete statement as to whether or not other investigative techniques have been tried and failed or why they reasonably

appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).[3]

The issuing judge must then find that "normal investigative procedures have been tried and

have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

*Id.* at § 2518(3)(c). This "necessity requirement" is "'designed to assure that wiretapping is

not resorted to in situations where traditional investigative techniques would suffice to

expose the crime.'" Foy, 641 F.3d at 464 (quoting United States v. Kahn, 415 U.S. 143, 153

n. 12 (1974)). While investigating officers are not required to "'exhaust all other conceivable

investigative procedures before resorting to wiretapping,'" *id.* (quoting United States v.

Zapata, 546 F.3d 1179, 1185-86 (10th Cir.2008), *cert denied*, ____ U.S. ___ (2008)), they

"must explain the need for wiretaps with some degree of specificity." *Id.*

The court has reviewed the affidavit submitted in support of the wiretap application

and finds it sufficient to support the judge's conclusion that the wiretap was necessary.[4] The

affiant explained "why each traditional investigative technique had either been ineffective

---

[3] *"Traditional investigative techniques include: (1) standard surveillance; (2) questioning and interrogating witnesses or suspects, including through the use of grand jury proceedings; (3) search warrants; (4) infiltration of criminal groups by confidential informants and undercover agents; (5) pen registers; and (6) trap and trace devices."* Foy, 641 F.3d 464.

[4] *In challenging the sufficiency of the affidavit submitted in support of the wiretap application, defendant focuses on parts of the affidavit, but ignores others. For example, defendant noted that the affiant stated that, based on his experience and training, he thought a garbage seizure could risk detection. Application, pp. 49-50. Defendant then commented: "[o]ne wonders what experience and what detection." Defendant's motion, p. 15. However, the affiant explained his background and experience in investigations related to controlled substances earlier in the application. Application, pp. 1-2. He also explained that, because Rivas lived in an apartment complex with a common area for garbage disposal, it would be difficult to identify and recover his garbage without being seen. Id. at 49-50.*

in this particular case or why the officer[] believed such techniques would be ineffective or dangerous." *Id.* The affiant stated that the layout of the apartment complex where Rivas[5] resided limited the effectiveness of conducting physical surveillance. He noted that agents conducted surveillance at the complex on numerous days before they were even able to identify the vehicle Rivas drove. *Id.* at 35. Agents also learned, based on an intercepted call, that individuals involved in the drug organization were aware they had been followed. *Id.* at 36-37.

The affiant detailed why an undercover agent had not been used and why controlled purchases and confidential sources would be ineffective, *id* at 38-42,[6] using as an example the limited information a confidential source, who had made multiple purchases from a supplier linked to Rivas, had been able to provide. *Id.* at 41-42 ("The CS is not placed high enough within the DTO to be privy to the necessary information to dismantle the DTO. At this time, it is unlikely law enforcement will be able to cultivate a cooperating source that is high enough to dismantle the DTO."). He also discussed why pen registers provided limited information other than evidence of contact between telephone numbers. They did not identify the parties to the call or indicate the substance of the conversation. *See* <u>United States v. Ramirez–Encarnacion</u>, 291 F.3d 1219, 1223 (10th Cir.2002) ( "the identity of many of the

---

[5]*Defendant Rivas is referred to in the pleadings as both Rafael Rivaz and Rafael Rivas.*

[6]*He stated that undercover purchases of methamphetamine would be cost prohibitive due to the size of the operation. Affidavit, p. 40 ("Since the Named Interceptees are multi-pound quantity importers and wholesale distributors of methamphetamine, and other controlled substances, enormous amounts of money would have to be expended by undercover agents before they could determine, if ever, the entire scope of this DTO.").*

conspirators and the full extent of the conspiracy remained unknown" despite the use of pen registers).

The affidavit also addressed why search warrants were not an effective investigative technique.  The officers had been unable to determine Rivas' source of supply and his supplier's storage locations and it was improbable that information about the organization would be uncovered by the seizure of controlled substances and drug proceeds.  A warrant, rather than revealing the extent of the organization's activities, would tip off the targets and cause them to "change their activity and locations."  Affidavit, p. 44.  *See* Ramirez–Encarnacion, 291 F.3d at 1223 & n.3 (because they would have alerted the conspirators to the investigation, "search warrants would have been counterproductive").

In explaining why other investigative tools would not suffice, the officer's "'statements [were] factual in nature and ... specifically relate[d] to the individuals targeted by the wiretap.'" Foy, 641 F.3d at 464 (quoting United States v. Cline, 349 F.3d 1276, 1281 (10th Cir.2003)).  The affiant stated that the agents were not able, through the use of pen registers, to identify the members of the organization because they used fictitious or false subscriber information.  He gave as an example the subscriber address for a cell number used by Rivas – it was the address for El Mariachi Supermercado 1, a grocery store.  The affiant also stated that, while law enforcement officers had contemplated examining Rivas' garbage, they determined it would be difficult if not impossible to identify his garbage without detection because he lived in an apartment complex with a common trash disposal area.

It is apparent from the affidavit that many standard investigative techniques such as

the use of grand jury subpoenas, subject interviews or arrests are not effective when the crime being investigated involves a complex, compartmentalized trafficking organization specifically structured to avoid detection. As the affiant stated repeatedly, the object of the investigation was "not simply to arrest individual members of the conspiracy ... [but] to gather information and admissible evidence about the entire organization, including the suppliers, distributers, importers, and transporters." Zapata, 546 F.3d at 1187. The Tenth Circuit has "held on numerous occasions that the law enforcement goal of uncovering the size and scope of the conspiracy may justify the authorization of wiretaps." Foy, 641 F.3d at 464-65. The circumstances present here are similar to those found in several cases in which wiretap authorizations have been upheld, including Ramirez-Encarnacion, 291 F.3d at 1221-24 and Zapata, 546 F.3d at 1185-88. The court concludes the government sufficiently explained why the wiretap was necessary. Defendant's motion to suppress will be denied.

Defendant also has moved for disclosure of 404(b) evidence and for an *in camera* review of any presentence reports for government witnesses. The government has responded that it has not identified any 404(b) evidence that it intends to offer against this defendant and that there are no presentence reports of government witnesses to produce.

Accordingly, defendant Campos' motion to suppress [Doc. #113], which was adopted by defendant Rafael Quintero Rivas, is **denied**. Defendant's motions for disclosure of 404(b) evidence [Doc. #117] and for review of presentence reports [Doc. #119] are **stricken** as **moot**.

**IT IS SO ORDERED**.

Dated this 4th day of October, 2011.

JOE HEATON
UNITED STATES DISTRICT JUDGE